**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION**

| | |
|---|---|
| TODD JEUDE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:22-CV-151-SNLJ |
| | ) |
| STE. GENEVIEVE MEMORIAL HOSPITAL, et al., | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

This matter is before the Court on the motions to dismiss filed by defendants Ste. Genevieve County Memorial Hospital, ECF No. 52, and Dr. Teena Sharrock, ECF No. 64. Plaintiff Todd Jeude has filed responses. ECF Nos. 56, 67. The motions are fully briefed and ready for disposition. For the reasons discussed below, the Court will grant defendant Ste. Genevieve County Memorial Hospital's motion in part, and deny defendant Dr. Teena Sharrock's motion.

## **Background**

On November 2, 2022, plaintiff filed this action pursuant to the Emergency Medical Treatment and Active Labor Act of 1986 ("EMTALA"), 42 U.S.C. § 1395dd, against Ste. Genevieve Memorial Hospital (the "Hospital"). ECF No. 1. Plaintiff stated he was transported to the Hospital on September 21, 2022 after he was attacked by multiple inmates at the Ste. Genevieve Detention Center (the "Jail"). Plaintiff alleged that although he was brought to an examination room and questions were asked of him by an attending nurse and doctor, he was ultimately denied appropriate screening and treatment.

On November 14, 2022, this Court reviewed the complaint pursuant to 28 U.S.C. § 1915 and determined plaintiff had adequately pled an EMTALA claim at this stage of the litigation. ECF No. 4. Consequently, the Court ordered the Clerk to serve process on the defendant Hospital. *Id.*

On December 19, 2022, the Hospital filed a motion to dismiss on the basis of sovereign immunity, ECF No. 16, and a separate motion to dismiss for failure to state a claim under EMTALA, ECF No. 18. On December 28, 2022, plaintiff mailed to the Court a motion to amend his original complaint with a proposed amended complaint. ECF No. 28. The Court granted plaintiff's request. ECF No. 41. The amended filing is now the operative complaint. *See* ECF No. 42.

**Amended Complaint**

The amended complaint names the original defendant, the Hospital, and adds a second defendant, Dr. Teena Sharrock, M.D. ECF No. 42. Plaintiff alleges that on September 21, 2022, he was brought to the Hospital after he was "punched, kicked, stomped on, knocked uncon[s]cious, and cut and stabbed with a home-made razor 'shank.'" He claims he had "open wounds on his face with a large laceration approximately 1½" in length and ¼" deep." Plaintiff asserts the attack reinjured a previously dislocated and torn rotator cuff on his right shoulder and agitated a gunshot wound causing his skin to bubble.

After the escorting officers provided his information to the Hospital's intake personnel, plaintiff was directed to an examination room where he was triaged by a registered nurse. Dr. Sharrock subsequently entered the room. Plaintiff described her as "agitated from a previous encounter," "abrasive," and "rude." Plaintiff claims that as he was explaining his injuries to Dr. Sharrock, she stated: "There will be no x-rays, no images, no sutures, no observation, take him back to your facility and treat him there. I'll grant him a tetanus vaccine." Plaintiff asserts that

although he was "bleeding, in obvious pain, and fearful of his head and neck injuries," Dr. Sharrock discharged him without examination. Plaintiff further claims that Dr. Sharrock did not provide the Jail with post-discharge instructions and, as a result, the Jail did not know how to treat his injuries.

On September 29, 2022, plaintiff was seen by a doctor contracted by the Jail who ordered "an MRI and medications." Plaintiff asserts his facial laceration continued to bleed and did not close for four days post-incident, that he required stronger glasses due to blurred vision, and he continued to suffer from "tremendous" neck and shoulder pain. Plaintiff received the MRI on December 7, 2022, which revealed "a fractured shoulder, 3 compressed vertebrae in his neck, and 2 herniated discs, one specifically pressing the spinal cord." He was provided with a sling due to the shoulder fracture. On December 22, 2022, he was brought back to the Hospital to see an orthopedic specialist who provided him with a Cortisone injection. Plaintiff asserts the doctor told him that "so much time ha[d] lapsed from the initial injury that all he could do without invasive surgery was ease the pain" and monitor his condition.

Count I of plaintiff's amended complaint is against the Hospital pursuant to EMTALA. Plaintiff alleges the Hospital violated EMTALA by not appropriately screening or stabilizing him before discharging him back to the Jail, and not providing him with "equal emergency care" as others would have received by the Hospital.

Count II is against Dr. Sharrock in her individual capacity pursuant to 42 U.S.C. § 1983. Plaintiff identifies Dr. Sharrock as the attending physician and asserts she was deliberately indifferent to his serious medical needs. Plaintiff alleges she was acting under color of law when she violated his constitutional rights because the Jail contracted with her employer to provide medical services to inmate detainees.

3

Plaintiff seeks $50,000 in damages in Count I and the same for Count II, as well as punitive damages.

## Motions to Dismiss

### *A. Motion to Dismiss Filed by Ste. Genevieve County Memorial Hospital*

On February 17, 2022, the Hospital filed a motion to dismiss Count I of the amended complaint for failure to state a claim. ECF No. 52. The Hospital argues the amended complaint fails to state a claim because it fulfilled its duties pursuant to EMTALA by screening plaintiff and determining he did not have an emergency medical condition. The Hospital points to the amended complaint in which plaintiff admits he was visited by a registered nurse for "triage," was asked a series of questions by Dr. Sharrock for the purpose of medically examining him, and was provided with a tetanus vaccine. Because plaintiff was deemed to not have an emergency medical condition (*i.e.*, be in serious jeopardy or have a serious impairment or disfunction), the Hospital did not have an obligation to "stabilize" him. The Hospital points to his subsequent treatment – a sling, cortisone shot, and no recommendation for surgery – to support he did not have an emergency medical condition when Dr. Sharrock examined him on September 21, 2022. The Hospital further contends that plaintiff's argument of being denied "equal emergency care" is conclusory and does not adequately allege disparate treatment.

Plaintiff filed an opposition arguing Count I should not be dismissed because the fact he received a tetanus vaccine for an open wound on his right cheek, a fractured shoulder, compressed vertebrae, and herniated discs shows he was inappropriately screened in violation of EMTALA.[1] Plaintiff asserts he is slowly receiving the care he should have received on the night he sustained

---

[1] The Court notes that to the extent plaintiff argues the motion to dismiss should be denied because his complaint passed initial review under 28 U.S.C. § 1915, such a contention fails. The Court's prior initial review was not a determination of the merits of his claim or potential defenses thereto.

4

his injuries. Plaintiff argues the Hospital is erroneously construing his subsequent medical treatment "as some sort of admission that his needs were not serious," when, to the contrary, it evidences that the proper screening procedure required an X-ray and CT scan. Plaintiff also argues he was subject to disparate treatment because other patients would have received such radiological examinations as part of their emergency room screening.

### B. *Motion to Dismiss Filed by Dr. Teena Sharrock*

On March 28, 2023, plaintiff Dr. Teena Sharrock filed a motion to dismiss Count II of the amended complaint for failure to state a claim. ECF No. 64. Dr. Sharrock argues the amended complaint fails to state a claim pursuant to 42 U.S.C. § 1983 because she was not a state actor when she treated him at the Hospital. She asserts her employer, Ste. Genevieve County Memorial Hospital, was not alleged to maintain a contract to provide substantially all necessary medical care to inmates of the Jail, and she is not a state actor merely because she works for a county hospital.

Dr. Sharrock further argues, even if she was acting under color of state law, she was not deliberately indifferent to plaintiff's serious medical needs. First, she contends his complaints regarding right shoulder, neck, and upper back pain, skin which bubbles, and a cut on the check were not objectively serious. Second, her decision to not order radiological exams, at most, represents medical negligence, not an Eighth Amendment violation of cruel and unusual punishment.

Plaintiff filed an opposition arguing Count II should not be dismissed because the Hospital provides all of the Jail's emergency services, whether by contract or custom, and Dr. Sharrock was, as a result, acting under color of law. ECF No. 67. Additionally, plaintiff argues he has sufficiently alleged more than a negligence claim against Dr. Sharrock. To the contrary, plaintiff

5

points out that the allegations within his amended complaint included a statement that Dr. Sharrock acted knowingly and intentionally to deny him proper treatment for his injuries.

## Legal Standard

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A plaintiff need not provide specific facts in support of his allegations, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam), but must include sufficient factual information to provide the "grounds" on which the claim rests, and "to raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555, 597 n.3. *See also Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id.* at 562 (quoted case omitted). On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. *Id.* at 555-56; Fed. R. Civ. P. 8(a)(2).

**Discussion**

**A. Defendant Ste. Genevieve County Memorial Hospital**

*1. EMTALA Claims*

Congress enacted EMTALA to "address a distinct and rather narrow problem – the 'dumping' of uninsured, underinsured, or indigent patients by hospitals who did not want to treat them."[2] *Summers v. Baptist Med. Ctr. Arkadelphia*, 91 F.3d 1132, 1136 (8th Cir. 1996). EMTALA imposes two requirements on hospitals with emergency departments: (1) to provide "an appropriate medical screening examination" for any individual who comes to its emergency room seeking treatment to determine whether the individual has an emergency medical condition; and (2) if such serious medical condition does exist, stabilization of the medical condition prior to transferring or discharging the patient. 42 U.S.C. § 1395dd(a).

EMTALA defines an "emergency medical condition" as one that "manifest[s] itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in," the following:

> (i) placing the health of the individual (or, with respect to a pregnant woman, the health of the woman or her unborn child) in serious jeopardy,
>
> (ii) serious impairment to bodily functions, or
>
> (iii) serious dysfunction of any bodily organ or part[.]

*Id.* at § 1395dd(e)(1).

In the event a hospital determines an individual to be experiencing an emergency medical condition, it must provide either: "(A) within the staff and facilities available at the hospital, for

---

[2] By its terms, EMTALA applies to "participating hospitals," meaning hospitals that have Medicare provider agreements with the Secretary of Health and Human Services. *See* 42 U.S.C. § 1395dd(2); *Hunt ex rel. Hunt v. Lincoln County Mem. Hosp.*, 317 F.3d 891, 893 n. 4 (8th Cir. 2003). Defendant Hospital does not appear to dispute that it is a participating hospital under EMTALA.

such further medical examination and such treatment as may be required to stabilize the medical condition, or (B) for transfer of the individual to another medical facility in accordance with subsection (c) [restricting transfers until individual stabilized]." *Id.* at § 1395dd(b). If a hospital fails to meet these requirements, EMTALA contains a civil enforcement provision which provides a harmed individual with a private right of action to recover those damages available for personal injury under the law of the state where the hospital is located. *Id.* at § 1395dd(d)(2)(A).

Importantly, EMTALA does not "create[ ] a general federal cause of action for medical malpractice in emergency rooms." *Summers*, 91 F.3d at 1137. "EMTALA is not a federal malpractice statute and it does not set a national emergency health care standard; claims of misdiagnosis or inadequate treatment are left to the state malpractice arena." *Id.* "Rather, . . . EMTALA focuses on uniform treatment of patients presented in hospital emergency departments." *Hunt ex rel. Hunt v. Lincoln Cty. Mem. Hosp.*, 317 F.3d 891, 894 (8th Cir. 2003). "Patients are entitled under EMTALA, not to correct or non-negligent treatment in all circumstances, but to be treated as other similarly situated patients are treated, within the hospital's capabilities." *Summers*, 91 F.3d at 1138. *See also Vickers v. Nash Gen. Hosp., Inc.*, 78 F.3d 139, 144 (4th Cir. 1996) ("disparate treatment of individuals perceived to have the same condition is the cornerstone of an EMTALA claim"). Therefore, "a claim under EMTALA requires a showing of a lack of uniform treatment with other similarly situated patients." *Mead v. Salem Memorial Dist. Hosp.*, 2008 WL 205273, at *3 (E.D. Mo. Jan. 23, 2008) (citing *Summers*, 91 F.3d at 1138).

In the instant motion to dismiss, defendant Hospital argues the allegations in plaintiff's amended complaint do not support a claim that he was not provided with an appropriate medical screening examination, that he had an emergency medical condition that needed to be stabilized, or that he received different treatment than other similarly situated patients.

8

## 2. *Duty to Screen*

"While EMTALA does not define the term appropriate medical screening examination, '[m]ost of the courts that have interpreted the phrase have defined it as a screening examination that the hospital would have offered to any other patient in a similar condition with similar symptoms.'" *Pennington-Thurman v. Christian Hosp. Northeast.*, 2019 WL 5394500, at *3 (E.D. Mo. Oct. 22, 2019) (quoting *Marshall v. East Carroll Parish Hosp. Serv. Dist.*, 134 F.3d 319, 323 (5th Cir. 1998)) (collecting cases). *See also Summers*, 91 F.3d at 1138 ("An inappropriate screening examination is one that has a disparate impact on the plaintiff"). The Eighth Circuit has recognized three types of improper screenings that are actionable under EMTALA: (1) "failure to screen at all"; (2) "improper screening of patients for a discriminatory reason"; (3) and "screening a patient differently from other patients perceived to have the same condition." *Summers*, 91 F.3d at 1139.

Plaintiff's amended complaint alleged that he was "triaged" by a registered nurse, spoke with an attending physician who questioned him regarding his condition, and received a tetanus shot as ordered by the physician. These factual allegations establish that the Hospital's staff did not completely fail to screen him. *See e.g.*, *Pennington-Thurman*, 2019 WL 5394500, at *4 (screening occurred when plaintiff had the opportunity to describe his injuries to a nurse, a doctor reviewed plaintiff's chart, and he received bloodwork).

As to an improper screening based on a discriminatory reason or disparate treatment, plaintiff alleges in his amended complaint:

> 64. [The Hospital] has a duty to provide EQUAL Emergency Care to ALL who are presented to their Emergency Department and treat each individual as it would another individual, presented with the same or similar circumstances, within their capability.

9

> 65. [The Hospital's] failure to provide that duty and equal standard of care, caused plaintiff further injury. Contributing to pain and suffering and emotional distress.
>
> . . .
>
> 73. [Plaintiff] was not given the same care that other individuals have, and would receive under the same or similar circumstance, causing a disparate impact to the plaintiff in the form of further pain and injury and emotional distress.

ECF No 42 at 16, 22. Within his opposition brief to the instant motion, plaintiff does not clarify how he was treated differently from other patients. Instead he states that "he can prove these allegations through discovery with material evidence in the form of hospital records, video, incident reports, deputy statements, doctor statements and affidavits." ECF No. 56-1 at 7.

Plaintiff does not allege any non-conclusory facts to support his assertion that other patients, assumingly non-inmate patients, appearing with the same medical conditions were screened or treated differently than he was. Nothing in the complaint suggests that the Hospital's emergency department provided more thorough screenings to non-inmate patients with the same reported issues. Construing his pleadings liberally, the Court finds plaintiff did not plead facts to support a claim either that the Hospital screened him differently from other patients with similar conditions or failed to appropriately screen him for a discriminatory reason.

In short, plaintiff does not plead factual allegations demonstrating a connection between his incarcerated status and the screening he received. Plaintiff's allegations that the Hospital applied disparate treatment does not raise the right to relief above the speculative level. *See e.g.*, *Brown v. Providence Med. Servs.*, 2010 WL 4534407, at *4 (D. Neb. Nov. 1, 2010); *Prickett v. Hot Springs Cty. Med. Ctr.*, 2007 WL 2926862, at *3-4 (W.D. Ark. Oct. 5, 2007). Thus, the Court dismisses plaintiff's claim that the Hospital failed to provide appropriate medical screening in violation of EMTALA.

### 3. *Duty to Stabilize*

EMTALA requires that if, after screening a patient, a hospital determines the patient has "an emergency medical condition," the hospital must stabilize the patient before discharging or transferring him. 42 U.S.C. § 1395dd(b). *See also Summers*, 91 F.3d at 1136. The statute defines an emergency medical condition as one with acute symptoms of sufficient severity, including severe pain, such that the absence of immediate attention could reasonably be expected to result in placing the health of the individual in serious jeopardy, serious impairment to bodily functions, or serious dysfunction of any bodily organ or part. 42 U.S.C. § 1395dd(e)(1)(A). To "stabilize" an emergency medical condition, a hospital must "provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility[.]" *Id.* § 1395dd(e)(3)(A).

Plaintiff claims he presented to the Hospital exhibiting right shoulder, neck, and upper back pain and an open facial laceration after being physically assaulted and stabbed by several inmates. He indicated he explained his injuries to a registered nurse and attempted to also relay the information to Dr. Sharrock, the attending doctor, until she interrupted him. Plaintiff asserts the only treatment he received was a tetanus shot. Plaintiff claims Dr. Sharrock did not provide the Jail with post-discharge instructions and, as a result, they did not know how to treat his condition. The Hospital, in its motion to dismiss, does not dispute plaintiff had an open facial laceration and was exhibiting pain when he was discharged from the hospital.

On September 29, 2022, he was seen by a doctor at the Jail who ordered an MRI and prescribed medications. Plaintiff asserts his facial laceration continued to bleed and did not close for four days post-incident, that he required stronger glasses due to blurred vision, and he continued

11

to suffer from "tremendous" neck and shoulder pain. Plaintiff received an MRI on December 7, 2022, which revealed a fractured shoulder, three compressed vertebrae in his neck, and two herniated discs, one specifically pressing the spinal cord. He was provided with a sling due the shoulder fracture. It appears plaintiff had to be without a sling for approximately two months after the alleged injury occurred. On December 22, 2022, he was brought back to the Hospital to see an orthopedic specialist who provided him with a Cortisone injection. Plaintiff asserts the doctor told him that so much time had lapsed from the initial injury that all he could do without invasive surgery was ease the pain and monitor his condition.

The Court declines to find on a motion to dismiss that continued bleeding and pain, which was later revealed to be caused by a fracture, compressed vertebrae, and herniated discs, was not an "emergent medical condition" and did not need to be "stabilized." At this stage of the litigation, plaintiff's amended complaint appears to adequately allege that he had a "serious dysfunction" of a body part. Accepting the allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party, the Court finds plaintiff sufficiently alleged that he had an emergent medical condition and defendant Hospital failed to stabilize his condition prior to discharge. *See e.g.*, *Pennington-Thurman*, 2019 WL 5394500, at *5-6 (declining to grant a motion to dismiss on a EMTALA stabilization claim where plaintiff was discharged after he vomited and relayed that he "felt ill").

### B. Defendant Dr. Teena Sharrock

As a preliminary matter, defendant Dr. Sharrock seeks the Court to strike plaintiff's response to her motion to dismiss as untimely because it was three days overdue. *See* ECF No. 68 at 2. Self-represented litigants are required to follow the Court's rules and deadlines despite their *pro se* status, and the Court "may strike procedurally improper or untimely filings from the docket

under the Court's inherent power to control the cases on its docket[.]" *Hall v. Bilskey*, 2020 WL 6868253, at *2 (E.D. Mo. Nov. 23, 2020). The Court will, however, decline to strike plaintiff's response here as a three-day delay cannot be said to have prejudiced the defendant or improperly delayed the instant litigation. Thus, the Court will consider the plaintiff's response, regardless of its untimeliness.

Plaintiff was a pretrial detainee at the time of the incidents alleged in the amended complaint. A claim brought by a pretrial detainee pursuant to 42 U.S.C. § 1983 are analyzed under the Due Process Clause of the Fourteenth Amendment. *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007). "This makes little difference as a practical matter, though: Pretrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment." *Id.* "[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976) (quotations and citation omitted). "Deliberate indifference has both an objective and a subjective component." *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir. 2009) (quoted case omitted). "The objective component requires a plaintiff to demonstrate an objectively serious medical need." *Id.* "The subjective component requires a plaintiff to show that the defendant actually knew of, but deliberately disregarded, such need." *Id.*

Dr. Sharrock argues plaintiff failed to state a claim under 42 U.S.C. § 1983 because she was not functioning as a state actor when she screened plaintiff. To state a claim under 42 U.S.C. § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988); 42 U.S.C.A. § 1983. "It is the physician's function within the state system, not the precise terms of his employment, that

13

determines whether his actions can fairly be attributed to the State." *Id.* at 55-56. When making this determination, courts should consider the "degree to which the work of the private medical provider is controlled or influenced by the state," the nature of "the contractual relationship between the state and the medical care provider," and the degree to which the private entity replaces the State's provision of medical care to prisoners, as opposed to simply assisting the State. *See id.* 50-58; *Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 825-29 (7th Cir. 2009). The fact that the healthcare provider does not exclusively provide medical services to a prison does not make it "less a state actor than if [it] performed those duties as a full-time, permanent member of the state prison medical staff." *Id.*

Whether a private party may be characterized as a state actor turns on the circumstances of the case. The Supreme Court has recognized a private party may be considered a state actor where "the state has delegated to a private party a power traditionally exclusively reserved to the state," where the private actor "is a willful participant in joint activity with the State or its agents," and "where there is pervasive entwinement between the private entity and the state." *Wickersham v. City of Columbia*, 481 F.3d 591, 597 (8th Cir. 2007). In any circumstance, there must be "a close nexus not merely between the state and the private party, but between the state and the alleged deprivation itself." *Id*.

In his amended complaint, plaintiff alleges he needed emergency medical treatment after he was attacked by fellow inmates. Plaintiff states Jail employees transported him to the defendant Hospital where he was triaged and seen by defendant Dr. Sharrock. Plaintiff states he received subsequent care and treatment at the Hospital by an orthopedic surgeon when he was still a pre-trial detainee at the Jail. He claims the Jail had a "contract" with the Hospital "to provide a medical service to a pre-trial detainee." ECF No. 42 at 25-26. Plaintiff asserts in his opposition to the

14

motion to dismiss that he "can provide that the defendant [H]ospital does, in fact, provide ALL of Ste. Genevieve County Detention Center's emergency services. Whether or not this is by custom or contract remain[s] to be proven. (Including care provided by Sharrock)."[3] ECF No. 67 at 3. The Courts finds at this stage of the litigation, there is a question of fact as to whether the Hospital had a contract with the Jail to provide emergency services, or if the Hospital provided regular emergency treatment of Jail inmates. Consequently, the Court will decline to dismiss defendant Sharrock at this time as it is unclear whether she was functioning as a state actor.

Dr. Sharrock further argues that even if she was a state actor at the time she screened plaintiff, she was not deliberately indifferent to plaintiff's serious medical needs because his ailments were not objectively serious and her decision to not order radiological exams was, at most, medical negligence. The Court cannot agree, and finds that plaintiff's allegations against Dr. Sharrock are sufficient to survive dismissal under Fed. R. Civ. P. 12(b)(6).

As discussed above, plaintiff asserts he presented to the Hospital with shoulder, neck, and back pain, an open facial laceration, and bubbling skin after being assaulted and stabbed by several inmates with a shank. He claims his laceration continued to bleed for four days after the hospital visit, and was without a sling for two months after he sustained a shoulder fracture from the attack. An MRI revealed he had also sustained three compressed vertebrae in his neck and two herniated discs, one specifically pressing the spinal cord. These allegations show his medical conditions were objectively serious. Additionally, his amended complaint further indicates that Dr. Sharrock interrupted him as he was attempting to explain the scope of his injuries, and declined to perform

---

[3] Defendant Dr. Sharrock asks the Court to strike this statement from the Opposition for the reason that it "improperly pleads allegations not within the First Amended Petition." *See* ECF No. 68 at 2-3. The Court will decline to strike this statement. The allegations in plaintiff's amended complaint, standing alone, makes it sufficiently plausible that Dr. Sharrock was a state actor due to her employer's relationship with the Jail. Whether the Hospital does or does not have a contract or custom for the provision of emergency medical services with the Jail will be determined during the discovery phase of this litigation.

a physical examination, which included radiological exams, despite his complaints of severe pain in his shoulder, upper back, and neck, active bleeding, and bubbling skin. As a result, the Court will not dismiss plaintiff's medical claims at this time.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Ste. Genevieve County Memorial Hospital's motion to dismiss [ECF No. 52] is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that plaintiff's claims for failure to screen in violation of EMTALA is **DISMISSED** without prejudice. The case will proceed on plaintiff's claim for failure to stabilize his medical condition in violation of EMTALA.

**IT IS FURTHER ORDERED** that Dr. Teena Sharrock's motion to dismiss [ECF No. 64] is **DENIED**.

**IT IS FURTHER ORDERED** that an appeal from this partial dismissal shall not be taken in good faith.

Dated this 5th day of May, 2023.

        STEPHEN N. LIMBAUGH, JR.
        SENIOR UNITED STATES DISTRICT JUDGE